GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By: STEPHEN CHA-KIM
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2768
Fax: (212) 637-2702
Email: stephen.cha-kim@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHEL COHEN, SOTHEBY'S FINANCIAL SERVICES, INC., and JOHN DOES 1-10, <br><br> Defendants in Interpleader. | No. 19 Civ. 9291 <br><br> **COMPLAINT** <br> **IN INTERPLEADER** |

Plaintiff the United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, alleges upon information and belief as follows:

**INTRODUCTION**

1.  The United States brings this civil action in interpleader under Rule 22 of the Federal Rules of Civil Procedure to seek a judicial determination of the rights to an acrylic painting by the renowned 20th-Century artist Jean Dubuffet ("Dubuffet"), entitled "Site avec 5 personnages" (the "Painting"), which is currently in the possession of the Federal Bureau of Investigation ("FBI"). (A color image of the Painting is attached hereto as an exhibit.)

2. Born in 1901, Dubuffet became a highly prolific and successful painter who was active in both France and the United States until his death in 1985. Hailed as an avant-garde experimenter, he is considered the founder of "Art Brut," or "raw art," a movement focused on producing "outsider" art freed from academic conventions, such as graffiti and work by the insane, the incarcerated, and children.

3. As explained below, the Government is subject to competing potential claims to the Painting from the above-named Interpleader-Defendants, and therefore has a legitimate fear of multiple liability with respect to the Painting. The Government wishes to divest itself of the Painting, which was last known to be the personal property of Interpleader-Defendant Michel Cohen ("Cohen"), a fugitive from law who is a judgment debtor to at least one other named Interpleader-Defendant and who initially came to be in possession of the Painting in 1996 under unknown circumstances. However, the Government cannot determine, without hazard to itself, how to proceed.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over the Government's Complaint in Interpleader pursuant to 28 U.S.C. § 1345.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1397.

6. This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 2361, which provides that, in any action of interpleader, a district court may issue its process for all claimants and enter an order restraining them from instituting or prosecuting any federal or state proceeding affecting the property involved.

7. Personal jurisdiction over the Defendants also exists pursuant to 28 U.S.C. § 1655, which provides that the Court, in an action related to enforcement of a claim to personal

property, may order any absent defendant who cannot be served or does not voluntarily appear to be constructively served with notice to appear or plead by a date certain. *See Bache Halsey Stuart Shields Inc. v. Garmaise*, 519 F. Supp. 682, 686 (S.D.N.Y. 1981) (applying § 1655 to interpleader actions and citing cases).

## PARTIES

8. Plaintiff is the United States of America, acting by and through its agencies, including the FBI.

9. Interpleader-Defendant Cohen is a resident of Brazil, where he has been present and has intended to remain since at least 2003, as a fugitive from charges of mail and wire fraud that were set forth in an indictment in *United States v. Cohen*, No. 03 Cr. 674 (S.D.N.Y.).

10. Interpleader-Defendant Sotheby's Financial Services, Inc. ("Sotheby's") is a Nevada corporation headquartered in New York City and is a major art-financing company that is affiliated with the global auction house and art broker of the same name.

11. Interpleader-Defendants John Does 1-10 are individuals or entities, whose identities are unknown to the United States at this time, that owned and/or had other property interests in the Painting prior to 1996 and/or are present creditors of Cohen.

## FACTUAL BACKGROUND

**Cohen's Fraud**

12. Until approximately 2001, Cohen was a prominent art dealer who, operating principally in New York City and Malibu, California, was involved in numerous transactions involving famous and valuable works of art with major international art galleries, collectors, and investors.

13. As alleged in the indictment in *United States v. Cohen*, No. 03 Cr. 674 (S.D.N.Y.), Cohen fraudulently obtained millions of dollars from these business partners, including by inducing galleries and collectors to consign to him paintings and other artworks by artists including, among others, Pablo Picasso, Marc Chagall, and Claude Monet. But Cohen knew payment for these artworks would not be forthcoming, and Cohen also duped investors into financing purported purchases of other artworks when Cohen knew no such bona fide transactions would take place.

14. Media reports have estimated that Cohen obtained a total of over $50 million from his activities defrauding his numerous victims.

15. Sotheby's was among those victims, and was defrauded of millions of dollars in funds that it provided to Cohen in order to acquire art.

16. By early 2001, Cohen's fraud was uncovered, and he went into hiding.

17. In 2001, Sotheby's filed suit against Cohen and eventually obtained a judgment against him in or around March 2002 in New York Supreme Court for New York County in the amount of $1,490.674.79.

18. Based on this judgment, on June 18, 2001, Sotheby's filed a lien against Cohen in New York County.

19. John Does #1-5 are other individuals or entities who remain unknown to the United States at this time that Cohen has defrauded and/or who may be creditors of Cohen.

**Cohen as Fugitive from the Law**

20. On April 13, 2001, while his whereabouts were still unknown, Cohen was charged by criminal complaint in this District, *see United States v. Cohen*, No. 03 Cr. 674, for interstate transportation of stolen property and fraud.

21. On May 6, 2003, Cohen was apprehended by local authorities in Rio de Janeiro, Brazil, and held pending extradition.

22. On May 28, 2003, a federal grand jury empaneled in this District indicted Cohen on 24 counts of mail and wire fraud, and a warrant was issued for his arrest. *See United States v. Cohen*, No. 03 Cr. 674.

23. On December 8, 2003, Cohen again became a fugitive, when he escaped from Brazilian custody while he was being transported to a hospital for an examination.

24. Brazil's Supreme Court has subsequently ruled that Cohen is not subject to extradition to the United States because he is now the father of, and source of material support for, a Brazilian citizen, who evidently had been born in Brazil during Cohen's stay in the country.

25. To date, Cohen remains a fugitive at large from the United States and is present, and intends to remain, in Brazil. He does not intend to appear for this or any other legal proceeding in New York or the United States, and he cannot be personally served.

**The Painting, Its Known Provenance, and Its Acquisition by the FBI**

26. The Painting is one of a series of largely abstract canvases that Dubuffet executed later in his career depicting Paris streetscapes and Parisian characters, or "personnages," through bold and seemingly crude, red, white, black, and blue images. It is a work of acrylic on paper mounted on canvas, and measures 26 3/8 inches by 19 5/8 inches, and was completed on June 21, 1981. Its catalogue raisonné (a comprehensive, annotated listing of all known artworks by a particular artist) number is E183, in *Catalogue des travaux de Jean Dubuffet : Psycho-sites (1981 - 1982)*, fasc. XXXIV.

27. Similar paintings from the same series have sold at public auction in recent years for hundreds of thousands of dollars.

28. The FBI, which had been investigating Cohen's alleged fraud and other unlawful activities since 2000, came into possession of the Painting on February 15, 2001, after interviewing Jerry Solomon ("Solomon"), an Upper East Side dealer specializing in Modern European and Postwar American paintings.

29. During the interview, Solomon informed the FBI agents that on or about January 6, 2001, Cohen had left the Painting with Solomon in order for Solomon to attempt its sale. Solomon related that Cohen had told him that the owner of the Painting was an individual named Don Rubin ("Rubin"), another New York art dealer.

30. Solomon recounted that he had prior transactions with Cohen but, when he became aware of media reports of Cohen's alleged fraud, he contacted the FBI to request that the FBI take possession of the Painting.

31. Solomon handed the Painting over to the custody of the FBI at the end of the February 15, 2001, interview.

32. The FBI subsequently learned from Rubin that he had purchased the Painting from Cohen in 1996, but had sold it back to Cohen on June 27, 2000, for the sum of $75,000, which was paid in or around November or December 2000 as part of a larger wire transfer. Rubin informed the FBI that he had transacted art deals with and lent money to Cohen in the past, resulting in losses of hundreds of thousands of dollars to Rubin.

33. Rubin informed the FBI on June 13, 2016, that he does not consider himself the owner of the Painting and in no way wishes to assert a claim over it.

34. The exact and complete provenance of the Painting prior to 1996, when Cohen first sold it to Rubin, is unclear. Upon information and belief, the Painting was at one point the property of the estate of Dubuffet, who died in 1985, and an art gallery in Paris, France, the Galerie Malingue, facilitated the Painting's sale to a purchaser located in Asia in or around May 1993. The identity of this purchaser, and the identity of any other individuals who may have owned the Painting at any time before it came into Cohen's possession, John Does #6-10, is unknown to the Government at this time.

35. It is unknown how and when Cohen first came into possession of the Painting.

36. Upon information and belief, Cohen has never made any attempt to reclaim possession or continue to assert title to the Painting after depositing it with Solomon for potential sale in January 200,1 and since Cohen has been living as a fugitive.

37. As a result, Cohen may have constructively abandoned the Painting as a matter of New York law.

## ADVERSE CLAIMS AND NEED FOR INTERPLEADER

38. Interpleader-Defendant Cohen, upon information and belief and based on the FBI's understanding that he re-purchased the Painting in 2000, may continue to assert title to the Painting as his personal property notwithstanding his possible abandonment of it as a matter of New York law.

39. Interpleader-Defendant Sotheby's is a judgment-creditor of Interpleader-Defendant Cohen.

40. Interpleader-Defendants John Does 1-5 are individuals or entities who are possible creditors of Interpleader-Defendant Cohen.

41. Interpleader-Defendants John Does 6-10 are individuals or entities who may have owned or otherwise had property rights to the Painting prior to 1996 and who may therefore have claims of title to the Painting.

42. The United States remains in possession of the Painting, which was initially recovered in New York County.

43. The Painting is personal property that, under Section 5201 of New York's Civil Practice Law and Rules, may be subject to enforcement in satisfaction of any judgments held against Cohen.

44. In light of the foregoing, the United States is subject to uncertainty as to the ownership of the Painting and is subject to real and potential competing claims thereto. The United States cannot determine which of the Defendants in Interpleader is entitled to take legal possession of the Painting.

45. The United States may be subject to double or multiple liability with respect to the Painting, as each Interpleader-Defendant may claim an interest in, or ownership of, the Painting.

46. The United States may seek to deposit the Painting with the Court, or to seek and abide by a determination by the Court as to how, where, and by whom the Painting should be held in custody during the pendency of this matter to ensure the Painting is properly maintained and preserved.

47. The United States files this interpleader action in good faith and without any collusion with any parties thereto.

**WHEREFORE**, the United States respectfully prays for judgment against the Defendants in Interpleader and each of them as follows:

I. That the Defendants in Interpleader and each of them be required to interplead and litigate among themselves their claims to the Painting;

II. That the Court determine and enter an order setting forth the identity of the proper claim or claims over the Painting;

III. That the United States be dismissed from this action without prejudice following deposit of the Painting into the registry of the Court or other determination by the Court as to the Painting's maintenance and custody during the pendency of this matter; and

IV. For such other relief as the Court deems just and equitable under the circumstances.

Dated: New York, New York
      October 8, 2019

                                      GEOFFREY S. BERMAN
                                      United States Attorney for the
                                      Southern District of New York

By:    */s/ Stephen Cha-Kim*
        STEPHEN CHA-KIM
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel. (212) 637-2768
        Fax (212) 637-2702
        stephen.cha-kim@usdoj.gov

# Exhibit to Complaint in Interpleader

